**\*\*E-filed 08/11/2010\*\***

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| CHAD M. ATKINS and ABEL B. DIAZ,<br><br>    Plaintiffs,<br>  v.<br><br>LITTON LOAN SERVICING, LLP, et al.,<br><br>    Defendants.<br>_____/ | No. C 10-0561<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS AND GRANTING MOTION TO STRIKE** |

I. INTRODUCTION

This action arises from what plaintiffs describe as a "subprime loan" they took out on residential real property. Plaintiffs have named as defendants the lender, Ownit Mortgage Solutions, LLC; the loan "servicer," Litton Loan Servicing, LLP, and a law firm that represented Litton. By these motions, Litton seeks dismissal of all of the claims for relief in the complaint directed against it, and to strike plaintiffs' request for punitive damages. The matter has been submitted without oral argument, pursuant to Civil Local Rule 7-1(b). The motion to dismiss will be granted in part, and denied in part, and the motion to strike will be granted.

## II. BACKGROUND

Plaintiffs Chad M. Atkins and Abel B. Diaz[1] are a married couple appearing in *pro se*. In 2005 they took out a loan of approximately $550,000 secured by real property they owned in Daly City, California.[2] Between December of 2008 and February of 2009, plaintiffs made numerous efforts to contact Litton to discuss the possibility of obtaining a loan modification. They aver that Litton told them it could not discuss modifying the loan unless they were at least three months delinquent, and that it would not accept any partial payments. Plaintiffs assert that Litton generally failed to respond to written correspondence or to phone messages. In late January of 2009, plaintiffs were able to reach a Litton representative, and were told that a loan modification was already being processed. Subsequently, however, in early February of 2009, plaintiffs were told that a loan modification application would be mailed to them, and that their file had been "tagged," such that foreclosure proceedings would be temporarily suspended.

Nevertheless, a few days later, a written notice of default was recorded against the property. The notice was accompanied by a declaration stating that Litton had fulfilled its obligation under California Civil Code § 2923.5 to contact the borrowers to "explore options . . . to avoid foreclosure," in that it had exercised "due diligence" but that it had been unable to reach plaintiffs. Among other things, the complaint seeks to set aside the foreclosure sale that apparently followed.

## III. LEGAL STANDARD

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a claim may be dismissed because of a "failure to state a claim upon which relief can be granted." Fed.R.Civ.P. 12(b)(6). A dismissal under Rule 12(b)(6) may be based on the lack of a cognizable legal theory or on the absence of sufficient facts alleged under a cognizable legal theory. *Johnson v. Riverside Healthcare Sys.*, 534 F.3d 1116, 1121 (9th Cir. 2008); *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).

---

[1] The complaint mentions an "Abel Diaz" and a "Bryan Diaz." Apparently both names refer to plaintiff Abel B. Diaz.

[2] The complaint does not indicate whether they acquired the property with this loan or whether it was a refinancing transaction.

2

In reviewing a complaint under Rule 12(b)(6), all allegations of material fact are taken as true and construed in the light most favorable to the non-moving party. *Marceau v. Blackfeet Hous. Auth.*, 540 F.3d 916, 919 (9th Cir. 2008); *Vignolo v. Miller*, 120 F.3d 1075, 1077 (9th Cir. 1999). The Court, however, is not required "to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1056-57 (9th Cir. 2008); *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). Although they may provide the framework of a complaint, legal conclusions are not accepted as true and "[t]hreadbare recitals of elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949-50 (2009); see also *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003).

Plaintiffs' second claim for relief sounds in fraud. Rule 9(b) of the Federal Rules of Civil Procedure requires that "[i]n allegations of fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." To satisfy the rule, a plaintiff must allege the "who, what, where, when, and how" of the charged misconduct. *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997). In other words, "the circumstances constituting the alleged fraud must be specific enough to give defendants notice of the particular misconduct so that they can defend against the charge and not just deny that they have done anything wrong." *Vess v. Ciba-Geigy Corp. U.S.A.*, 317 F.3d 1097, 1106 (9th Cir. 2003).

## IV. DISCUSSION

### A. Intentional Misrepresentation

The second claim for relief in the complaint alleges that Litton engaged in intentional misrepresentation. To state a claim for intentional misrepresentation under California law, a plaintiff must plead seven elements with particularity: (1) the defendant represented to the plaintiff that an important fact was true; (2) that representation was false; (3) the defendant knew that the representation was false when the defendant made it, or the defendant made the representation recklessly and without regard for the truth; (4) the defendant intended that the plaintiff rely on the representation; (5) the plaintiff reasonably relied on the representation; (6) the plaintiff was harmed;

and (7) the plaintiff's reliance on the representation was a substantial factor in causing that harm to the plaintiff. *Manderville v. PCG & S Group, Inc.*, 146 Cal.App.4th 1486, 1498 (2007).

Here, it is not entirely clear what precise representations plaintiffs contend they relied on that were false, but they have identified at least all of the following as the basis of their claim:

1. Litton advised them that it could not consider loan modification until they were at least three months delinquent.

2. Litton would not accept any partial payments.

3. In late January of 2009, Litton advised that it "was already working on a loan modification, and that plaintiffs should call again in 90 to 180 days.

4. In February of 2009, Litton told plaintiffs it would send them a loan modification application, and that their file had been "tagged," such that any foreclosure proceedings would be temporarily suspended.

5. During the January and February discussions, Litton falsely asserted to each plaintiff that it had already discussed alternatives to foreclosure with the other plaintiff.

6. The declaration attached to the Notice of Default falsely represented that Litton had exercised due diligence, but that it had failed to reach plaintiffs to discuss alternatives to foreclosure.

As to Litton's alleged representations that it would not consider loan modification until plaintiffs were three months delinquent and that it would not accept partial payments, plaintiffs have failed to allege any facts showing that such assertions were false. While plaintiffs may have sufficiently alleged Litton was in fact not "already working on a loan modification" in January of 2009 and that Litton had not previously discussed alternatives to foreclosure with each plaintiff, they fail to advance any facts showing that they reasonably *relied* on those purported misrepresentations to their detriment. To the contrary, plaintiffs specifically allege that they *continued* their efforts to contact Litton to address their loan status, and that they *immediately* confronted Litton with the inaccuracy of its representations that it had previously discussed alternatives to foreclosure with each plaintiff.

4

As to Litton's February representation that it was mailing a loan modification application package, plaintiffs have not even alleged that they received no such package. Even assuming such non-receipt, they have offered no facts showing that the promise was false when made. Litton's alleged representation that plaintiffs' file had been "tagged" to suspend foreclosure proceedings temporarily does not give rise to an actionable claim for misrepresentation, because by plaintiffs' own allegations, the notice of default was recorded within "days" thereafter, and plaintiffs have not alleged that they took, or refrained from taking, any action in the interim in reliance on the representation.

Finally, although plaintiffs have asserted that the declaration submitted with the Notice of Default was false, they cannot allege that Litton intended *plaintiffs* to rely on those statements, and again plaintiffs specifically allege that they did *not* rely on it, but instead immediately challenged the declaration. Accordingly, plaintiffs have failed to allege any express statement by Litton that was both false and on which they relied to their detriment.

Plaintiffs argue, however, that in a more general sense they were in fact misled by Litton because it deliberately "lulled" them into allowing their loan to become three months delinquent and into believing that a loan modification was possible and was underway. Thus, even though Litton's statements that it could not consider loan modification until plaintiffs were at least three months delinquent and that it would not accept partial payments may not have been *literally* false, plaintiffs contend they are nonetheless actionable as representations designed to induce their inaction. This claim fails for several related reasons. First, plaintiffs have not alleged facts showing that they would have prevented the loan from becoming delinquent had they not relied on Litton's representations. Once again, the allegations they do make tend to show the contrary. Plaintiffs allege that they wished to make *partial* payments, not that they could or would have kept the loan current. Similarly, if plaintiffs were in fact able and willing to make the payments had they allegedly been advised not to do so, they have not alleged facts explaining why their purported reliance on Litton's representations rendered them unable to pay the amounts past due once it became clear that foreclosure was going forward. The facts alleged by plaintiffs may support an inference that Litton's representations temporarily allayed some of the worry they likely were

5

experiencing about the loan, but there is nothing beyond conclusory statements to support the claim that they acted or failed to act in any way differently as the result of those representations.

More fundamentally, plaintiffs' claim presupposes that Litton (and the lender) not only would *consider* a loan modification application, but that a loan modification agreement would in fact be reached. Plaintiffs have alleged no facts or representations by Litton that would support their reasonable reliance on an expectation of such an outcome. Plaintiffs have not met their burden under Rule 9(b) to allege fraud with particularity. Accordingly, the second claim for relief is dismissed, with leave to amend.

### B. California Civil Code section 2923.5

Plaintiffs' fifth claim for relief asserts a violation of California Civil Code section 2923.5. That section provides that a "mortgagee, trustee, beneficiary, or authorized agent may not file a notice of default pursuant to section 2924 until 30 days after contact is made as required by paragraph two "or 30 days after satisfying the due diligence requirements as described in subdivision (g)." Cal. Civ. Code § 2923.5(a)(1). Plaintiffs and defendants dispute whether section 2923.5 creates any private right of action and case authority is split on that point. *See*, *e.g.*, *Gaitan v. Mortgage Electronic Registration Systems*, 2009 WL 3244729, *7 (C.D.Cal. 2009) ("Section 2923.5 contains no language that indicates any intent whatsoever to create a private right of action. As such, the Court concludes that section 2923.5 does not contain such a right . . . ."); *Ortiz v. Accredited Home Lenders, Inc.,* 639 F.Supp.2d 1159, 1166 (S.D.Cal. 2009) (agreeing with the plaintiffs that "the California legislature would not have enacted this 'urgency' legislation, intended to curb high foreclosure rates in the state, without any accompanying enforcement mechanism," and finding section 2923.5 *does* contain a private right of action).

Even assuming that section 2923.5 is enforceable by private plaintiffs, however, the claim fails because the foreclosure sale has already taken place. In *Mabry v. Superior Court*, 185 Cal. App. 4th 208 (2010), the California Court of Appeal extensively reviewed section 2923.5 and persuasively reasoned that the remedy for a violation is postponement of a foreclosure sale. *Id.* at 235. Where foreclosure sale has already occurred, though, the court noted that a section 2923.5

6

United States District Court
For the Northern District of California

violation does not affect the title: "There is nothing in section 2923.5 that even hints that noncompliance with the statute would cause any cloud on title after an otherwise properly conducted foreclosure sale." *Id.* "[U]nder the plain language of section 2923.5, read in conjunction with section 2924g, the only remedy provided is a postponement of the sale before it happens." *Id.* As plaintiffs here have alleged that their property was already sold at foreclosure, no remedy remains under the provision. Accordingly, the section 2923.5 claim is dismissed without leave to amend.

C. California Business and Professions Code section 17200

In their fourth claim for relief, plaintiffs charge Litton with violating California's Unfair Competition Law ("UCL"). Cal. Bus. & Prof. Code § 17200. California's UCL prohibits acts or practices that are: (1) fraudulent; (2) unlawful; or (3) unfair. *Id.* Each prong of the UCL constitutes a separate and distinct theory of liability. *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1127 (9th Cir. 2009). "A business practice is unfair within the meaning of the UCL if it violates established public policy or if it is immoral, unethical, oppressive or unscrupulous and causes injury to consumers which outweighs its benefits." *McKell v. Wash. Mut., Inc.*, 49 Cal. Rptr. 3d 227, 240 (2006).

Plaintiffs base their section 17200 claim on two underlying alleged wrongs: (1) Litton's alleged practice of "lulling" borrowers into default through misrepresentations, and (2) Litton's alleged violation of Civil Code section 2923.5. The former basis of the claim fails because the underlying fraud has not been adequately pleaded, and the latter basis fails because there is no viable claim for violation of Civil Code section 2923.5. Accordingly, the motion to dismiss the fourth claim for relief is granted, with leave to amend in the event plaintiffs can plead an underlying fraud.[3]

D. California Civil Code section 2943

---

[3] Litton also challenges plaintiffs' right to bring the section 17200 claim as a representative action on behalf of other similarly-situated homeowners. Despite some language in the complaint suggesting that plaintiffs seek injunctive relief "to protect other homeowners," Complaint ¶ 76, their opposition to this motion disavows any intent to pursue redress except on their own behalf. Opposition at 8:11-14.

7

In their seventh claim for relief, plaintiffs aver that Litton violated Civil Code section 2943 by failing to respond to their repeated written demands to produce the original promissory note and deed of trust they executed in connection with the loan at issue.[4] Litton contends that the claim fails because only "beneficiaries" are required to produce documents under section 2943, and because that section does not require production of *original* documents. In opposition, plaintiffs point out that section 2943(c)(1) imposes the obligation to respond to a borrower's demands on the "beneficiary, *or his or her authorized agent.*" (Emphasis added.) Litton fails to respond to this point on reply.

While Litton may or may not have been an "authorized agent" for purposes of receiving and responding to demands within the meaning of section 2924, the issue cannot be determined at the pleading stage. Similarly, even though plaintiffs likely were not entitled to production of *original* documents, it does not appear as a matter of law that Litton was necessarily thereby relieved of an obligation to produce *copies* when it received plaintiffs' demands. Although plaintiffs have pleaded no facts that would support a claim for any actual damages under this statute, the section provides for statutory damages in the amount of $300.[5] Accordingly, the motion to dismiss the seventh claim for relief is denied.

E. <u>Setting aside the sale and cancelling the deed of trust</u>

Plaintiffs' eighth and ninth claims for relief seek to set aside the foreclosure sale and to cancel the Trustee's Deed, respectively. Litton's sole attack on these claims is that plaintiffs have

---

[4] It appears likely that plaintiffs were demanding *original* documents in preparation for an argument made by some borrowers that a party seeking to foreclose must first establish it is in possession of such documents. *See*, *e.g.*, *Pagtalunan v. Reunion Mortg. Inc*., 2009 WL 961995, *2 (N.D.Cal. 2009). Plaintiffs, however, have not advanced such a contention in this action.

[5] In addition to attempting to show that it was not an "authorized agent" for purposes of section 2943, Litton remains free to attempt to establish that any violation was not "willful" or that the statutory damages apply only to a failure to provide a "beneficiary statement, a payoff demand statement, or a short-pay demand statement," but not to a copy of a promissory note or deed of trust. *See* §2943(e).

8

not adequately alleged an ability to tender the loan proceeds.[6] To the extent plaintiffs contend they have a right to set aside the sale and deed of trust based on alleged violations of TILA, Litton's argument is foreclosed by this Court's decision in *Botelho v. U.S. Bank, N.A.*, 692 F.Supp.2d 1174 (N.D.Cal. 2010) which held that plaintiffs are not required under TILA to *plead* an ability to tender the loan proceeds, even though some appropriate tender may be required before a sale can actually be set aside.

It is less clear, however, that plaintiffs can avoid pleading a present ability to tender to the extent that they may be relying on state law as a basis to rescind the transaction. *See, e.g.*, *Periguerra v. Meridas Capital, Inc.*, No. 09-4748, 2010 WL 39593, at *3 (N.D. Cal. Feb. 1, 2010) ("Plaintiffs must allege that they are willing to tender the loan proceeds to the lender. This is a basic tenet of California contract law.")  As the complaint presently stands, it is simply not clear on what basis plaintiffs are attempting to set aside the sale and the deed of trust, nor is it entirely clear the extent to which they may be challenging the propriety of the foreclosure without regard to whether the underlying loan transaction is or can be rescinded.  Under these circumstances, it is not possible to conclude that plaintiffs have stated a viable claim.  Accordingly, the motion to dismiss the eighth and ninth claims for relief is granted, with leave to amend.

### F. Motion to strike

Litton moves to strike plaintiffs allegations that they are entitled to punitive damages, arguing that they have not alleged sufficient facts to give rise to a right to punitive damages, particularly against Litton itself.  Plaintiffs' opposition fails to argue specifically that they have adequately pleaded a basis for punitive damages, instead referring to and relying on their opposition to the motion to dismiss for support of the proposition that their basic claims are viable.  Even if plaintiffs had adequately pleaded actionable misrepresentations, their additional allegations of oppression, fraud, or malice on the part of Litton are too conclusory and lack a sufficient factual

---

[6] In passing, Litton suggests that plaintiffs' claims against the lender for violations of the Truth in Lending Act ("TILA") may be time-barred.  Litton does not develop an argument for dismissal of these claims on that basis, however.

9

basis to support imposition of punitive damages. Given that the misrepresentation claim fails as presently constituted, there is even less basis for the punitive damages claim. Accordingly, the allegations seeking punitive damages are stricken, without prejudice to reasserting them in the event plaintiffs can plead a misrepresentation claim and additional facts supporting the requisite level of oppression, fraud, or malice.

## V.  CONCLUSION

The motion to dismiss the first claim for relief (misrepresentation), the fourth claim for relief (California Business and Professions Code § 17200), and the eighth and ninth claims for relief (setting aside the sale and cancelling the deed of trust) is granted, with leave to amend. The motion to dismiss the fifth claim for relief (California Civil Code section 2923.5) is granted without leave to amend. The motion to dismiss the seventh claim for relief (California Civil Code section 2943) is denied. The motion to strike is granted, without prejudice. Any amended complaint shall be filed within 20 days of the date of this order.

IT IS SO ORDERED.

Dated: 08/11/2010

RICHARD SEEBORG
UNITED STATES DISTRICT JUDGE

10