IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

CHAD M. ATKINS, et al.

    Plaintiffs,

v.

LITTON LOAN SERVICING LLP, et al.

    Defendants.

No. 10-00561-EDL

**ORDER GRANTING MOTION TO DISMISS WITH PREJUDICE**

    Before this Court is defendant Litton Loan Servicing LLP's ("Litton") motion to dismiss and motion to strike portions of Plaintiffs' First Amended Complaint alleging various improprieties in connection with a mortgage transaction. For the following reasons, the motion to dismiss is GRANTED WITH PREJUDICE. The motion to strike is therefore MOOT.

**Procedural Background**

    Pro se Plaintiffs Abel B. Diaz and Chad Atkins filed this mortgage case against Litton Loan Servicing, Ownit Mortgage Solutions, and The Wolf Firm in February, 2009. The case was initially assigned to another judge of this district who granted in part and denied in part Litton's motion to dismiss and motion to strike the initial complaint with leave to amend in August 2010, and then allowed multiple extensions of time to file an amended complaint due to the parties' representations that they were trying to settle the matter. Thereafter, the case was reassigned to this Court and Plaintiff filed a first amended complaint ("FAC") adding certain allegations as well as a Fair Housing Act claim against Litton. Litton has moved to dismiss all claims against it and strike portions of the FAC.

**Factual Background**

In 2005, Plaintiffs took out a loan of approximately $550,000 secured by real property they owned in Daly City, California. FAC ¶ 11. The loan was brokered and originated by Ownit, and was thereafter assigned to an unknown entity. FAC ¶ 14-15. Litton is the present owner of the subject loan. FAC ¶ 5. Between December 2008 and February 2009, Plaintiffs made numerous efforts to contact Litton to discuss the possibility of obtaining a loan modification. FAC ¶¶ 32 - 41. They aver that Litton told them it could not discuss modifying the loan unless they were at least three months delinquent and that it would not accept any partial payments, and that this statement was in contravention of an internal policy to assist distressed homeowners regardless of their delinquent status. FAC ¶ 32. Plaintiffs assert that Litton generally failed to respond to written correspondence or to phone messages. FAC ¶ 32-41.

In late January 2009, Plaintiffs were able to reach a Litton representative who told them that a loan modification was already being processed. FAC ¶ 53-54. In early February, however, Plaintiffs were told that a loan modification application would be mailed to them, and that their file had been "tagged," such that foreclosure proceedings would be temporarily suspended. FAC ¶ 55. Litton never sent the loan modification package as promised. FAC ¶ 56. However, in reliance on representations that foreclosure had been suspended until consideration of the loan modification package which Plaintiffs believed was in the mail, Plaintiffs did not send in any full or partial payments. FAC ¶ 58. Plaintiffs allege that, had they "known of the false representations the Plaintiffs would have kept the loan current or would have made payments towards the delinquent amount. After the initial hardship, the Plaintiffs could make payments but for the misrepresentations of Litton and its failure to provide a full accounting of the delinquent amount." FAC ¶ 58; see also ¶ 65 ("Plaintiffs could have and would have made payments towards the delinquency amount and/or full payments on the loan . . .").

A few days after Plaintiffs' were told that their file had been tagged, a written notice of default was recorded against the property. FAC ¶ 59. The notice was accompanied by a declaration stating that Litton had fulfilled its obligation under California Civil Code § 2923.5 to contact the borrowers to "explore options . . . to avoid foreclosure," in that it had exercised "due diligence" but

2

that it had been unable to reach Plaintiffs. FAC ¶ 59, Ex. A. Plaintiffs immediately objected to the notice by letter. FAC ¶ 60, Ex. B. Among other things, the complaint seeks to set aside the foreclosure sale that followed.

**LEGAL STANDARD**

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a claim may be dismissed because of a "failure to state a claim upon which relief can be granted." Fed.R.Civ.P. 12(b)(6). A dismissal under Rule 12(b)(6) may be based on the lack of a cognizable legal theory or on the absence of sufficient facts alleged under a cognizable legal theory. Johnson v. Riverside Healthcare Sys., 534 F.3d 1116, 1121 (9th Cir. 2008); Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001). A complaint will survive a motion to dismiss if it contains "sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (citing Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1974 (2007)). The reviewing court's "inquiry is limited to the allegations in the complaint, which are accepted as true and construed in the light most favorable to the plaintiff." Lazy Y Ranch LTD v. Behrens, 546 F.3d 580, 588 (9th Cir. 2008).

The Court, however, is not required "to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." In re Gilead Scis. Sec. Litig., 536 F.3d 1049, 1056-57 (9th Cir. 2008); Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001). A court need not accept as true the complaint's "legal conclusions." Iqbal, 129 S. Ct. at 1949. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." Id. at 1950. Thus, a reviewing court may begin "by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Id. Courts must then determine whether the factual allegations in the complaint "plausibly give rise to an entitlement of relief." Id. Though the plausibility inquiry "is not akin to a probability requirement," a complaint will not survive a motion to dismiss if its factual allegations "do not permit the court to infer more than the mere possibility of misconduct . . . ." Id. at 1949 (internal quotation marks omitted), 1950. That is to say, plaintiffs must "nudge[] their claims across the line from conceivable to plausible." Twombly, 550 U.S. at 570.

Additionally, claims sounding in fraud are subject to a heightened pleading standard. Rule

9(b) of the Federal Rules of Civil Procedure requires that "[i]n allegations of fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." To satisfy the rule, a plaintiff must allege the "who, what, where, when, and how" of the charged misconduct. Cooper v. Pickett, 137 F.3d 616, 627 (9th Cir. 1997). In other words, "the circumstances constituting the alleged fraud must be specific enough to give defendants notice of the particular misconduct so that they can defend against the charge and not just deny that they have done anything wrong." Vess v. Ciba-Geigy Corp. U.S.A., 317 F.3d 1097, 1106 (9th Cir. 2003).

**Analysis**

Litton initially points out that this Court may lack subject matter jurisdiction over the matter, and then moves to dismiss each of the claims against it for failure to state a claim.

**A. Subject Matter Jurisdiction**

Defendant Ownit has not been served or dismissed, though the initial complaint was filed almost a year and a half ago. Plaintiff initially asserted a federal TILA claim against Ownit, and pendent state law claims against Litton. Litton argues that Ownit should be dismissed from the case pursuant to Rule 4(m), after which the Court would lack subject matter jurisdiction. Rule 4(m) provides that the Court "must dismiss the action without prejudice against that defendant or order that service be made within a specified time" if the defendant is not served within 120 days after the complaint is filed, but "must extend the time for service for an appropriate period" upon a showing of good cause for the failure to timely serve. See Fed. R. Civ. P. 4(m). Plaintiffs have not explained why they have failed to timely serve Ownit or moved for an alternative method of service, so dismissal of Ownit and the claims against it (Claims 1, 3, 5) is appropriate.

However, Plaintiff also now asserts a federal FHA claim against Litton, which is another basis for federal jurisdiction. Thus, the FAC does not fail on its face for lack of federal jurisdiction. As discussed below, however, there is no basis for Plaintiff's FHA claim and it is dismissed with prejudice along with each of Plaintiffs' other claims.

**B.    Failure to State a Claim**

    **1.    Intentional Misrepresentation (Claim 2)**

The second claim in the FAC alleges that Litton engaged in intentional

4

misrepresentation. To state a claim for intentional misrepresentation under California law, a plaintiff must plead seven elements with particularity: (1) the defendant represented to the plaintiff that an important fact was true; (2) that representation was false; (3) the defendant knew that the representation was false when the defendant made it, or the defendant made the representation recklessly and without regard for the truth; (4) the defendant intended that the plaintiff rely on the representation; (5) the plaintiff reasonably relied on the representation; (6) the plaintiff was harmed; and (7) the plaintiff's reliance on the representation was a substantial factor in causing that harm to the plaintiff. Manderville v. PCG & S Group, Inc., 146 Cal.App.4th 1486, 1498 (2007).

It is not entirely clear precisely what representations Plaintiffs contend they relied on that were false, but they have identified at least all of the following as the basis of their claim:

1. Litton advised them that it could not consider loan modification until they were at least three months delinquent, in contravention of an unspecified "internal policy" to assist homeowners with possible alternatives regardless of the delinquency status and a "federal guideline" to assist homeowners regardless of the length of delinquency.

2. Litton would not accept any partial payments.

3. In late January 2009, Litton advised that it "was already working on a loan modification, and that Plaintiffs should call again in 90 to 180 days.

4. In February 2009, Litton told plaintiffs it would send them a loan modification application, and that their file had been "tagged," such that any foreclosure proceedings would be temporarily suspended, when in fact Litton had not sent a loan modification package and foreclosure was not suspended.

5. During the January and February discussions, Litton falsely asserted to each Plaintiff that it had already discussed alternatives to foreclosure with the other Plaintiff.

6. The declaration attached to the Notice of Default falsely represented that Litton had exercised due diligence, but that it had failed to reach Plaintiffs to discuss alternatives to foreclosure.

This claim still fails for the reasons previously articulated in the prior Order granting dismissal of the claim. See 8/11/10 Order (Dkt. # 44). Specifically, Plaintiffs still have not alleged facts showing that Litton's representations that it would not consider loan modification until

5

Plaintiffs were three months delinquent or accept partial payments were false when made. The fact that there may have been some unspecified policy to "assist" homeowners regardless of delinquency status does not mean that Litton was required to consider a loan modification before three months of delinquency or that Plaintiffs would have qualified for any such modification. "[P]laintiffs' claim presupposes that Litton (and the lender) not only would *consider* a loan modification application, but that a loan modification agreement would in fact be reached. Plaintiffs have alleged no facts or representations by Litton that would support their reasonable reliance on an expectation of such an outcome." Id. at 6. Plaintiffs also have not pled enough detail about the alleged "internal policy" to reasonably apprise Litton of what it is being accused of.

Further, even if Plaintiffs have sufficiently alleged that Litton was not already working on a loan modification in January 2009 or previously discussed alternatives to foreclosure with each Plaintiff, Plaintiffs have not shown how they reasonably relied on those purported misrepresentations to their detriment. To the contrary, they claim that they continued their efforts to contact Litton to address their loan status, and immediately confronted Litton with the inaccuracy of its representations that it had previously discussed alternatives to foreclosure with each Plaintiff. Regarding the alleged misrepresentations that Litton was working on a loan modification in January and that it would, but never did, send a loan modification package in February, Plaintiffs claim that – in reliance – they did not send in any full or partial payments. They allege that, had they known of the false representations, they would have "kept the loan current or would have made payments towards the delinquent amount. After the initial hardship, the Plaintiffs could make payments but for the continued misrepresentations of Litton and its failure to provide a full accounting of the delinquent amount." FAC ¶ 58.

However, Litton's representations that it had suspended foreclosure proceedings temporarily does not give rise to an actionable claim for misrepresentation, because by Plaintiffs' own allegations, the notice of default was recorded within "days" of the misrepresentations, and Plaintiffs have not alleged that they took, or refrained from taking, any action in the interim in reliance on the representation. FAC ¶ 59. Litton also points out that the foreclosure sale was actually postponed for several months from June 8 to September 8, 2009 (RJN Exs. D, G), so if Plaintiffs were able to keep

6

current on the loan they had ample notice and opportunity to make themselves current after learning that the representations were false at the time of the notice of default, but did not take any such action. As Judge Seeborg previously stated in granting dismissal of this claim:

> if plaintiffs were in fact able and willing to make the payments had they allegedly been advised not to do so, they have not alleged facts explaining why their purported reliance on Litton's representations rendered them unable to pay the amounts past due once it became clear that foreclosure was going forward. The facts alleged by plaintiffs may support an inference that Litton's representations temporarily allayed some of the worry they likely were experiencing about the loan, but there is nothing beyond conclusory statements to support the claim that they acted or failed to act in any way differently as the result of those representations.

8/11/10 Order at 5-6. Nothing in Plaintiffs' revised complaint changes this conclusion.

Finally, even if the due diligence declaration attached to the Notice of Default were false, Plaintiffs do not allege that Litton intended Plaintiffs to rely on those statements, and Plaintiffs specifically allege that they did not rely on it, but instead immediately challenged the declaration. FAC ¶ 60, Ex. C.

Plaintiffs have not met their burden under Rule 9(b) to allege fraud with particularity. Given that Plaintiffs have now had multiple chances to adequately plead this claim but are unable to do so, the claim is dismissed with prejudice.

**C.     Unfair and Deceptive Practices Act Claim (Claim 4)**

Litton contends that this claim should be dismissed because Plaintiffs have not sufficiently pled a claim under California Business & Professions Code section 17200 (the "UCL"). California's UCL prohibits acts or practices that are: (1) fraudulent; (2) unlawful; or (3) unfair. Id. Each prong of the UCL constitutes a separate and distinct theory of liability. Kearns v. Ford Motor Co., 567 F.3d 1120, 1127 (9th Cir. 2009). This cause of action is derivative of some other illegal conduct or fraud committed by a defendant, and a plaintiff must state with reasonable particularity the facts supporting the statutory elements of the violation. Lomboy v. SCME Mortgage Brokers, 2009 WL 1457738, at *7 (N.D. Cal. May 26, 2009).

Plaintiffs' UCL claim is based in part on an alleged violation of California Civil Code section 2923.5 (FAC ¶ 75), but since this claim was previously dismissed with prejudice that statute cannot form the basis of the UCL claim. 8/11/10 Order at 6-7. Plaintiffs also argue that (1) "lulling

homeowners such as Plaintiffs into inaction by making false promises concerning the status of the foreclosure," (2) falsely informing Plaintiffs that partial payments are not accepted, and (3) failing to provide Plaintiffs with all evidence of indebtedness in violation of California Civil Code section 2943(b)(1) all constitute unfair or fraudulent business practices that underlie their UCL claim. FAC ¶ 77-80. The first two assertions still fail because the underlying fraud cannot be adequately pled. See 8/11/10 Order at 7. The third assertion also fails to support this claim because Plaintiffs' underlying claims based on California Civil Code section 2943 fail for the reasons discussed below. Accordingly, the motion to dismiss the fourth claim for relief is granted with prejudice.

### D. Civil Code § 2943(b)(1) and 2943(B) (Claims 6 and 7)

Plaintiffs' FAC makes claims for violation of California Civil Code sections 2943(b)(1) and 2943(B).[1] Section 2943(b)(1) provides that: "A beneficiary, or his or her authorized agent, shall, within 21 days of the receipt of a written demand by an entitled person or his or her authorized agent, prepare and deliver to the person demanding it a true, correct, and complete copy of the note or other evidence of indebtedness with any modification thereto, and a beneficiary statement." Plaintiffs allege that they made written demands for the promissory note and deed of trust in February and March 2009, and Litton willfully failed to respond to the demands. FAC ¶ 92-93, 97, Ex. F. Plaintiffs contend that they have suffered at least $125,000 in damages due to improvements on the property as well as day-to-day expenses incurred as a result of the sale. FAC ¶ 95.

Litton previously moved to dismiss Plaintiffs' claim based on an argument that it is not a "beneficiary" or "authorized agent" obligated under the statute and that it was not required to produce the original note and deed as demanded by Plaintiff. This argument was previously rejected as premature, and because Plaintiffs' demand for the original note and deed did not necessarily excuse an obligation to produce a copy. 8/11/10 Order at 8. Litton also argues that there is no allegation that it received the written demands, but the FAC alleges that the demands were mailed and faxed to Litton, and attaches a fax confirmation. FAC ¶ 92-93, 97, Ex. F.

---

[1] There is no section 2943(B) in the statute, and the Court interprets the FAC to refer to section 2943(e), which provides for statutory damages of $300.

8

However, Plaintiffs still have not properly alleged any damage caused by the failure to respond to their written demands for the note and deed that would entitle them to damages under section 2943(e)(4). Plaintiffs have not linked their allegation of $125,000 in improvements, or even the loss of ownership of their house, to any failure to provide the note or deed. Further, the statutory damages provision appears to be limited to demands for a "beneficiary statement, a payoff demand statement, or a short-pay demand statement," and Plaintiffs do not allege that they made any of these types of demands. The sixth and seventh claims are dismissed with prejudice.

### E.   Set Aside Foreclosure and Cancellation of Trustee's Deed (Claims 8 and 9)

Plaintiffs' FAC seeks to set aside the foreclosure sale and cancel the trustee's deed. They allege that, since they "are attacking the underlying loan, they are not required to tender any monies in satisfaction of the loan since it would constitute an affirmative of the debt." FAC ¶ 97, 104. However, the claims against Litton are all based on California state law, where the "tender rule" applies. In previously dismissing these claims, the Court held that, to the extent the claims were based on state law, it was not possible to conclude that Plaintiffs stated a viable claim because it was unclear on what basis they were trying to set aside the sale. 8/11/10 Order at 9. Plaintiffs' FAC now alleges that the claim to set aside the foreclosure is based on Litton's failure to comply with California's statutory notice requirements governing non-judicial foreclosures. FAC ¶ 94. Plaintiffs additional allegations are still insufficient.

"A valid and viable tender of payment of the indebtedness owing is essential to an action to cancel a voidable sale under a deed of trust." Karlsen v. American Sav. & Loan Assn., 15 Cal.App.3d 112, 117 (1971); see also Arnolds Management Corp. v. Eischen, 158 Cal.App.3d 575, 578 (1984) ("It is settled that an action to set aside a trustee's sale for irregularities in sale notice or procedure should be accompanied by an offer to pay the full amount of the debt for which the property was security."). In short, "it is a debtor's responsibility to make an unambiguous tender of the entire amount due or else suffer the consequences that the tender is of no effect." Nguyen v. Calhoun, 105 Cal.App.4th 428, 439 (2003). The failure to tender bars not only claims to set aside a foreclosure sale, but also claims that are "implicitly integrated" with the irregular sale. See Karlson, 15 Cal.App.3d at 121.

9

California district courts apply the tender rule in examining wrongful foreclosure claims. Anaya v. Advisors Lending Group, 2009 WL 2424037, at *10 (E.D. Cal. Aug. 3, 2009) ("Plaintiff offers nothing to indicate that she is able to tender her debt to warrant disruption of non-judicial foreclosure"); Alicea v. GE Money Bank, 2009 WL 2136969, at *3 (N.D. Cal. July 16, 2009) ("When a debtor is in default of a home mortgage loan, and a foreclosure is either pending or has taken place, the debtor must allege a credible tender of the amount of the secured debt to maintain any cause of action for foreclosure."); Montoya v. Countrywide Bank, 2009 WL 1813973, at * 11-12 (N.D. Cal. June 25, 2009) ("Under California law, the 'tender rule' requires that as a precondition to challenging a foreclosure sale, or any cause of action implicitly integrated to the sale, the borrower must make a valid and viable tender of payment of the debt"). The application of the "tender rule" prevents "a court from uselessly setting aside a foreclosure sale on a technical ground when the party making the challenge has not established his ability to purchase the property." Williams v. Countrywide Home Loans, 1999 WL 740375, at *2 (N.D. Cal. Sept. 15, 1999); see also Benham v. Aurora Loan Servs., C-09-2059 SC (N.D. Cal. Oct. 1, 2009) (granting a motion to dismiss a wrongful foreclosure claim because the plaintiff failed to allege a credible tender offer).

"The rules which govern tenders are strict and are strictly applied." Nguyen v. Calhoun, 105 Cal.App.4th 428, 439 (2003). "The tenderer must do and offer everything that is necessary on his part to complete the transaction, and must fairly make known his purpose without ambiguity, and the act of tender must be such that it needs only acceptance by the one to whom it is made to complete the transaction." Gaffney v. Downey Savings & Loan Assn., 200 Cal.App.3d 1154, 1165 (1988) ("An offer of partial payment is of no effect.") (internal quotation marks omitted). The debtor bears "responsibility to make an unambiguous tender of the entire amount due or else suffer the consequence that the tender is of no effect." Gaffney, 200 Cal.App.3d at 1165; see also Aguilar v. Bocci, 39 Cal. App. 3d 475, 478 (1974) (stating that a trustor cannot "quiet title without discharging his debt. The cloud upon his title persists until the debt is paid. He is entitled to remain in possession, but cannot clear his title without satisfying his debt."); Karlson, 15 Cal.App.3d at 117 ("'. . . It is apparent from the general tenor of the decisions that an action to set aside the sale, unaccompanied by an offer to redeem, would not state a cause of action which a court of equity

10

would recognize.'") (quoting Leonard v. Bank of America, 16 Cal.App.2d 341, 344 (1936)).

Plaintiffs allege in their FAC that they " are ready and willing to tender the delinquency amount at the time of the Notice of Default and continue making payments into the Court's account until resolution of this matter." FAC ¶¶ 98, 105. However, they have not alleged that they can or will tender the entire amount owed because the tender offer is limited to the amount owed at the time of the notice of default, not the entire amount of the Note or the amount owed as of today. Further, at oral argument Plaintiffs acknowledged that it would be "impossible" for them to pay the amount in arrears at this time. Thus, Plaintiffs have not and cannot allege tender and claims eight and nine are dismissed with prejudice.

### F. Fair Housing Act Claim (Claim 10)

Plaintiff's FAC adds a Fair Housing Act claim under 42 U.S.C. section 3605. This section provides that: "It shall be unlawful for any person or other entity whose business includes engaging in residential real estate-related transactions to discriminate against any person in making available such a transaction, or in the terms or conditions of such a transaction, because of race, color, religion, sex, handicap, familial status, or national origin." Under the FHA, a "residential real estate-related transaction" means: "(1) The making or purchasing of loans or providing other financial assistance – (A) for purchasing, constructing, improving, repairing, or maintaining a dwelling; or (B) secured by residential real estate. (2) The selling, brokering, or appraising of residential real property." 42 U.S.C. § 3605(b). To bring a claim for disparate treatment under the FHA, the plaintiff must allege: "(1) plaintiff's rights are protected under the FHA; and (2) as a result of the defendant's discriminatory conduct, plaintiff has suffered a distinct and palpable injury." Housing Rights Center v. Sterling, 404 F.Supp.2d 1179, 1190 (C.D.Cal. 2004).

The FAC alleges generally that Plaintiffs are "members of a class of individuals subject to protection from discrimination and/or disparate treatment," and that Litton purposefully targeted them based on "race and/or national origin and/or sex and offered less than favorable loan options offered to a white borrower." FAC ¶ 109-110. Plaintiffs also refer vaguely to a "pattern or extended practice of discriminating against Hispanics." FAC ¶ 113. Plaintiffs contend that, under Munoz v. International Home Capital Corp., 2004 WL 3086907, *4 (N.D.Cal. 2004), this is sufficient to state a

11

FHA claim. In <u>Munoz,</u> however, the FHA claim was specifically directed at the practice of "reverse redlining" (practice of extending credit on unfair terms to specific geographic areas due to income, race, or ethnicity) and disparate treatment of Hispanic Spanish speakers. Plaintiffs have not included any such specificity in the FAC.

In contrast to <u>Munoz</u>, the allegations supporting Plaintiffs' FHA claim are conclusory and unclear and Plaintiffs have acknowledged that they have no further facts to support their claim. Specifically, it is unclear from the FAC how or what terms, conditions or privileges Litton refused or provided in a discriminatory manner, as it does not specify how Plaintiffs were treated differently or even what protected class they claim to be a part of. When questioned at oral argument, Plaintiffs stated that they are Hispanic and believe, based on "discussions with friends" that they were treated differently from non-Hispanics. However, they acknowledged that they have no first-hand knowledge of any discrimination, do not know why others are allegedly being treated differently, and do not know if the others are similarly situated in terms of their credit scores or other factors that might affect loan servicing options. Without any factual basis for their subjective belief of discrimination, leave to amend would be futile.

While the Court is sympathetic to Plaintiffs' circumstances, there is no legal basis for their claims against Litton. and Litton's motion to dismiss each of the claims against it is GRANTED WITH PREJUDICE. The motion to strike is therefore MOOT.[2] Ownit is DISMISSED for failure to timely serve under Federal Rule of Civil Procedure 4(m). The Wolf Firm has filed a declaration of non-monetary status agreeing to be bound by any order or judgment of the Court. This Order therefore disposes of this action in its entirety and the Clerk of Court is Ordered to close the case.

Dated: September 1, 2011

*Elizabeth D. Laporte*
ELIZABETH D. LAPORTE
United States Magistrate Judge

---

[2] In connection with its motion to dismiss and motion to strike, Litton filed a request for judicial notice. The Court need not rely on any of the documents attached to the request to decide the motion to dismiss, so does not rule on Plaintiffs' objections to the request. However, to the extent the objections need to be considered, they are without merit.